UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

FILED
FEB 2 2 2019
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ AN
DEPUTY

ACADEMY OF ALLERGY & ASTHMA
IN PRIMARY CARE et al.,

Plaintiffs,

v.

QUEST DIAGNOSTICS
INCORPORATED,

Defendant.

Civil Case No. 5:17-1295

## MEMORANDUM OPINION

This is another suit brought by the Academy of Allergy & Asthma in Primary Care (AAAPC), a trade association of primary care doctors interested in providing allergy testing and immunotherapy, and United Allergy Services (UAS), a corporation trying to break into the allergy testing and immunotherapy market. In a prior case, they claimed the Allergy & Asthma Network (AAN, an allergist advocacy organization) led a conspiracy with Phadia (an allergy-testing equipment manufacturer), various allergist associations, and individual doctors to block UAS's entry into the market, violating federal and state antitrust laws and tortiously interfering with UAS's contracts and business relations. But the jury rejected their claims, and this Court denied their motion for judgment notwithstanding the verdict. *See* Mem. Op., *United Biologics, LLC v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, 5:14-cv-35 (W.D. Tex. Feb. 21, 2019), ECF No. 596.

UAS and AAAPC now claim defendant Quest Diagnostics, the nation's largest provider of allergen-identification blood tests, was the real ringleader of the conspiracy. They press nearly

identical—and often verbatim[1]—claims: that Quest flouted the Sherman Antitrust Act; breached the Texas Free Enterprise and Antitrust Act; misappropriated trade secrets; and tortuously interfered with UAS's contracts and economic advantage, both individually and in a civil conspiracy.

But UAS and AAAPC's claims are time-barred. First, their antitrust and tort claims concern an alleged conspiracy to restrain trade and to tortuously interfere with UAS's business relations. But according to the Complaint, Quest's most recent overt act furthering this conspiracy occurred in August 2013, when Quest employees allegedly met with Phadia representatives concerning Phadia's meeting with an insurance company over reimbursement policies for UAS-affiliated physicians. Compl. ¶ 92. Yet both the Sherman Act and the Texas Free Enterprise and Antitrust Act impose four-year limitations periods. *See* 15 U.S.C. § 15b; Tex. Bus. & Com. Code Ann. § 15.25 (West). Texas common law allows even less time for tortious interference and civil conspiracy claims: two years. *See First Nat'l Bank of Eagle Pass v. Levine*, 721 S.W.2d 287, 289 (Tex. 1986) (tortious interference); *Navarro v. Grant Thornton, LLP*, 316 S.W. 3d 715, 719 (Tex. App. 2010) (civil conspiracy). So UAS and AAAPC had to bring their antitrust claims by August 2017 and their tort claims by August 2015. But UAS and AAAPC did not bring these claims until December 28, 2017—well past both deadlines.

Second, UAS and AAAPC's trade secrets claim alleges Quest misappropriated a UAS customer list by giving it to Phadia, who used it in February 2012 to send misleading information to UAS's customers. Trade secrets claims must be brought within three years from when the plaintiff discovered or could have discovered the misappropriation through ordinary diligence.

---

[1] *Compare* Compl. ¶¶ 1–4, 29, 107–13, 115, 117, 130–31, 135–36, 152, ECF No. 1, *with* 4th Am. Compl. ¶¶ 34–36, 45, 144, 149–50, 164–67, 169, 171, 181–82, 189, 191, 205, *United Biologics, LLC v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, 5:14-cv-35 (W.D. Tex. Feb. 12, 2016), ECF No. 235.

2

*See* Tex. Civ. Prac. & Rem. Code Ann. § 16.010 (West). Taking as true UAS and AAAPC's claim that Phadia's exploitation of the list caused them to "suffer[] in terms of lost customers and decreased performance of contracts," they never describe why it took them so long to figure out UAS's alleged misappropriation caused the harm. Did they ask their fleeing customers what happened, or stop to think what those customers had in common? Did they question why once fruitful contracts turned flagging? Ordinary diligence seems to require at least that much. And since UAS and AAAPC fail to explain why they could not have discovered the misappropriation through ordinary diligence in the months following February 2012, the time to bring a trade secrets claim expired at the latest in mid-2015—at least two-and-a-half years before UAS and AAAPC filed this suit.

None of UAS and AAAPC's contrary arguments persuade otherwise. Though they cite four places their Complaint supposedly shows overt acts by Quest within the limitations period, the corresponding paragraphs either allege actions taken wholly by Phadia (the claimed May 2014 visit to a Texas hospital to dissuade it from affiliating with UAS); discuss aftershocks of a prior untimely overt act (emails regarding an insurance company's already-completed policy shift), *see United States v. Therm-All, Inc.*, 373 F.3d 625, 633-34 (5th Cir. 2004); or are insufficiently specific to give rise to a continued claim (that "Quest and Phadia continued to work with other co-conspirators to minimize the competitive threat . . . . [and] to have communications with payors about changing reimbursement policies," Compl. ¶¶ 103–04), *see Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d 117, 129 (5th Cir. 1975). What's more, UAS and AAAPC's attempt to skirt their antitrust claims' four-year limitations period with the discovery rule collides with the Supreme Court's rejection of that rule in the antitrust context. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 188-91 (1997) (distinguishing the "pure injury

3

accrual rule . . . [as] applie[d] in traditional antitrust cases" from the proposed discovery accrual rules in the civil RICO context); *see also id.* at 197 n.1 (Scalia, J., concurring in part and in the judgment).

UAS and AAAPC's claim that Quest concealed its unlawful conduct similarly fails. UAS and AAAPC knew to subpoena Quest in the earlier litigation by at least December 2015, well within the limitations period triggered by Quest's August 2013 overt act, and even within the time-period to add Quest to that case. Their subpoena included twenty-seven different document requests and called for testimony relating to twelve topics, all relevant to UAS and AAAPC's current claims. *See* Compl. app. D, ECF No. 1-1. But UAS and AAAPC did not attempt to join Quest, and further waited two more years to bring this new action, by which time the limitations period lapsed. Nor do UAS and AAAPC now explain with any specificity what Quest actively concealed and why they could not meet the statutory deadlines. So UAS and AAAPC fall well short of Rule 9's heightened pleading standard for their fraudulent concealment excuse to toll the statute of limitations. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997).

\* \* \*

Because "it is evident from the plaintiff's pleadings that the action is [time-]barred and the pleadings fail to raise some basis for tolling," *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003), the Court will grant Quest's motion [8] to dismiss under Rule 12(b)(6). An accompanying order follows.

Date: February 12, 2019

Royce C. Lamberth
United States District Judge

4